UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 15-mj-3054-KAR |
| ) | |
| ALEXANDER CICCOLO, ) | |
| a/k/a "Ali Al Amriki," ) | |
| Defendant. ) | |

Government's Memorandum in Support
of Its Motion to Detain Alexander Ciccolo

The United States of America, by and through Carmen M. Ortiz, United States Attorney for the District of Massachusetts, submits this Memorandum and the accompanying affidavit of Federal Bureau of Investigation ("FBI") Special Agent Paul Ambrogio[1] in Support of Its Motion to Detain Alexander Ciccolo ("Ciccolo") pursuant to 18 U.S.C. § 3142(e). The defendant should be detained because he is both a danger to the community and a risk of flight.

1.  Preliminary Statement

A detention hearing is required because the defendant is charged with possessing a firearm after previously being convicted of a crime punishable by a term of imprisonment exceeding one year in violation of 18 U.S.C. § 922(g)(1), which offense constitutes a felony that involves the possession of a firearm. See 18 U.S.C. § 3142(f)(1)(E). The maximum penalty for violating Section 922(g) is ten years in prison. See 18 U.S.C. § 924(a)(2). Here, the defendant ordered and took delivery of four firearms he had ordered, including two rifles with large ammunition magazines, to use during his plan to kill innocent people in support of ISIL, an international terrorist organization. The defendant is both a danger to the community and a risk of flight. Therefore, he should be detained.

---

[1] Special Agent Ambrogio is an Agent with the Western Massachusetts Joint Terrorism Task Force ("JTTF").

2.     Procedural History

On July 4, 2015, the defendant was arrested and charged in a complaint with possessing a firearm after being previously convicted of a felony in violation of 18 U.S.C. § 922(g)(1). On July 6, 2015, the defendant appeared before the Court and received appointed counsel. The government filed a motion for pretrial detention and a detention hearing was scheduled for July 14, 2015. The defendant is being held in custody pending the detention hearing.

3.     Ciccolo's Criminal History

On February 17, 2015, the defendant was convicted in Northern Berkshire District Court, of the offence of Operating Under the Influence of Liquor, a violation of Massachusetts state law Chapter 90 Section 24(1)(a)(1), a crime punishable by up to 30 months imprisonment. The defendant was placed on probation.

4.     Ciccolo's Support of ISIL and His Domestic Terrorism Plans

In the Fall of 2014, the FBI became aware that the defendant had expressed a desire to go overseas to fight for ISIL, a foreign terrorist organization. According to a close acquaintance, the defendant had a long history of mental illness and in the last 18 months had become obsessed with Islam. The acquaintance also said that the defendant had recently stated that he believed that the "faith is under attack" and that he is "not afraid to die for the cause." The acquaintance advised that the acquaintance had received text messages from the defendant indicating that America is "Satan" and characterizing Americans as disgusting.

On October 17, 2014, the FBI discovered a Facebook profile, under the name "Ali Al Amriki," that contained information indicating the user was interested in martyrdom for the sake of Islam and was living in the United States. Subsequent investigation identified the defendant as Ali Al Amriki. On October 18, 2014, the Ali Al Amriki's Facebook page included a

photograph of an individual in a wooded area wearing a head covering and holding a black machete and accompanied by the statement, "Another day in the forest strengthening myself." On October 27, 2014, Ali Al Amriki's Facebook page posted an image that appeared to be a dead American soldier that included the following statement by Ali Al Amriki, "Thank you Islamic State!  Now we won't have to deal with these kafir back in America."   "Kafir" means "non-believers" of Islam.   Information posted on the Facebook page also showed that Ali Al Amriki had the desire to fight for ISIS (also known as ISIL).

The FBI arranged for a cooperating witness ("CW-1") to meet the defendant, who told CW-1 that he had a plan to engage in violence in support of ISIL.   On June 24, 2015, the defendant had an in-person meeting with CW-1 in Pittsfield, Massachusetts which was audio recorded.   During this meeting, the defendant spoke about his plans to travel to another state to conduct terrorist attacks on civilians, members of the U.S. military and law enforcement personnel.   The defendant told CW-1 that he would attack two different bars and a police station, which he described geographically.   The defendant stated that he planned to use improvised explosive devices during the attack to include pressure cooker bombs and/or portable microwave bombs.   The defendant stated that:

> you put umh, take a pressure cooker
>       \* \* \*
> Uhm, fill it up with ah, black powder
>       \* \* \*
> Yeah, you fill it up with ball bearings,
> nails, glass, rocks . . . you know

The defendant also explained that the improvised explosive device would have a "built in timer" and that the device "heats itself up."

On June 30, 2015, the defendant had a second in-person meeting with CW-1 which also was audio-recorded. During that conversation, CW-1 asked the defendant whether he had heard what happened in Tunisia. The defendant responded,

> Awesome. Awesome, you know that ah, that brother in Tunisia was impressive . . . he got like 38, 39 people … one guy … that is a huge accomplishment I think.

The government believes that this was a reference to the June 26, 2015 shooting attack at a beachside resort in Tunisia in which one person used firearms and grenades to kill 38 people. The gunman was killed and ISIL claimed credit for the attack. That same day additional terrorist attacks occurred in other cities in France and Kuwait, in what appeared to have been coordinated fashion. The defendant referenced the attack in France, saying something to the effect that "I think he cut off his boss's head in uhm, somehow pinned it to the gate of his work."

The defendant continued to talk with CW-1 about his plan to conduct a terrorist attack in another state. The defendant wrote out a list of items that would be needed to conduct the attack including:

- four (4) AK-47s,
- two (2) sniper rifles,
- four (4) handguns, and
- gelignite (which the defendant explained was a blasting gelatin, "a variety of dynamite")

The defendant drew a map of the United States and showed CW-1 where the states that he was interested in were located on the map. The defendant also stated that he wanted to conduct an attack at a State University using assault rifles and improvised explosives. The defendant told CW-1 that the attack would be concentrated in the college dorms and cafeteria and would include executions of students broadcast live via the internet.

The defendant told CW-1 that he planned to rob a gun store to obtain firearms and travel out of state to purchase fireworks in order to obtain the black powder needed for the attacks. He also stated that he would purchase pressure cookers to use as improvised explosive devices.

During the June 30, 2015 meeting the defendant also explained that he had changed his plans from targeting a police station to targeting a university because there were many more people at the university. The defendant said that if a student was Muslim, he or she would be permitted to help, sit tight or leave. The defendant said that he knew how to use sniper rifles, and that he had grown up with guns. "I know what I'm doing," he explained. The defendant told CW-1 that he wanted to have "tons of ammo" for the assault rifles. He also said that he wanted to do it before Ramadan was over, and no later than July 31, 2015. He said that he wanted to ensure that there were a lot of people there, like in a cafeteria at lunchtime, and that he wanted the conditions to be right where he could see it with his own eyes. The defendant said that he wanted to use pressure cookers to make an explosion and referenced the Boston Marathon bombings. Finally, the defendant said that if he ended up having to make a stand, then that was okay. He said, "We win or we die."

On July 2, 2015, the defendant had an online conversation with CW-1. During this conversation, the defendant told CW-1 about his target, a bar near a college. CW-1 inquired whether the defendant had acquired any explosives, and the defendant said that "We are gonna need the same stuff as before." The defendant said that they would use two pressure cooker bombs, and that the pressure cookers were not expensive, but the black powder (a low explosive) would be. The defendant said that the brothers in Boston (a reference to the Boston Marathon bombers) paid four hundred dollars for the amount of fireworks they used.

The defendant told CW-1 that he knew how to build the bombs and that other components were also necessary: "Nails and things like that. But I already have those. And I also have aerosol cans and propane tanks to maximize explosive power." When asked about the ignition of the bomb, the defendant said that "[t]he timer is already built in, it heats up and builds up pressure." The defendant said that he would handle acquisition of the ignition source.

During the July 2, 2015 instant messaging chat, the defendant said that "The big thing is guns." After CW-1 responded that he may be able to help, the defendant said, "What I am gonna do is prepare fire bombs. I'll do that today. T[hey] are cheap and effective." The defendant again lamented, "Really need the guns though. Otherwise it's a waste of time for me to stay around here akhi [Arabic for brother]." CW-1 said that AK-47s (a type of assault rifle) are hard to get. The defendant's response was, "If they are hard to get but you can get something else easier then get the easier one … You still have the list akhi?" The defendant confirmed that his list for guns included four handguns and two assault rifles. CW-1 asked whether CW-1 could assist the defendant in getting a ride to acquire the black powder, and the defendant said, "You get the rifles. I'll get the powder. Then next time we meet I want us to have at least those two things."

In a later instant messaging session on July 2, 2015, the defendant told CW-1 that "Things are moving right along." CW-1 asked whether the target was the same bar the defendant had previously mentioned, and the defendant responded that it was not. He explained that the other place was a cafeteria at the college he had mentioned and that the target place was "Very sinful and has a crowd." The defendant also said that it was a favorable place to get out of, suggesting that he was also considering the escape routes. CW-1 asked to clarify portions of their roles in the preparation for the attack, and the defendant said, "You get the rifles, I'll get the

6

powder."

The next day, on July 3, 2015, FBI JTTF agents observed the defendant purchase a pressure cooker at the Walmart in North Adams, Massachusetts. An agent observed the defendant in the house wares department at Walmart looking at pressure cookers. The defendant opened a pressure cooker box and examined it. Walmart provided a receipt indicating that the defendant purchased a pressure cooker, as well as a copy of the store video. A review of that video confirmed that the defendant purchased a pressure cooker.

On July 3, 2015, after his trip to Walmart the defendant communicated again with CW-1 via an instant messaging chat. During the chat, the defendant told CW-1 that he had purchased a pressure cooker: "Allahu Akbar!!![Arabic phrase for God is great] … I got the pressure cookers today. Alhamdulillah." The defendant also said that he had already made ten firebombs.

5.   Ciccolo's Receipt and Possession of Firearms

On July 4, 2015, the defendant took into his possession the following four firearms that he had previously ordered from CW-1:

>.223 Colt AR-15 rifle,
>556 Sig Arms SG550 rifle,
>9mm Glock 17 handgun, and
>10mm Glock 20 handgun.

A photograph of the firearms is attached as Exhibit A.

6.   Ciccolo's Arrest and the Search of His Residence

The defendant was arrested on July 4, 2015, as he was carrying the two rifles and two handguns back to his residence at Apartment C, 10 Murray Street, Adams, Massachusetts. During the subsequent execution of a federal search warrant at the defendant's residence, FBI

7

JTTF agents found several partially constructed "Molotov Cocktails" which the defendant had told CW-1 he was building. These incendiary devices contained what appeared to be shredded Styrofoam soaking in motor oil, which the defendant had told CW-1 would cause the fire from the exploded devices to stick to people's skin and make it harder to put the fire out. Agents also found two machetes and a long curved knife in the defendant's apartment.

    7.    <u>Ciccolo's Continuing Support for ISIL</u>

After the defendant was arrested, he waived his Miranda rights and spoke to FBI Special Agents Paul Ambrogio and Julia Cowley. The defendant refused to talk about the guns with which he was arrested but he reaffirmed his support for ISIL.

    8.    <u>Ciccolo's Potentially Fatal Attack on an Innocent Nurse</u>

After he was arrested, the defendant was taken to the Franklin County House of Correction. During the defendant's processing into the facility he met with a nurse for routine medical screening. During his meeting with the nurse, the defendant grabbed a pen and forcefully stabbed the nurse in the head, leaving a bloody hole in the nurse's skin and causing the pen to break in half. A photograph of the head wound caused by the defendant is attached as Exhibit B.

    9.    <u>Legal Standard</u>

Under the Bail Reform Act of 1984, pretrial detention is required if the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The judicial officer must find either (1) by clear and convincing evidence, that the defendant is a danger to the community or (2) by a preponderance of the evidence, that the defendant poses a risk of flight. 18 U.S.C. § 3142(f).

Title 18, United States Code, Section 3142(g) outlines factors permitted to be considered by the judicial officer in determining whether to order pre-trial detention:

> [I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, [the judicial officer shall] take into account the available information concerning–
>
> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence . . .;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole or on other release pending trial, sentencing, appeal, or completion of a sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

At the detention hearing, "the rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information . . . ."  18 U.S.C. § 3142(f).

10. <u>Ciccolo Should Be Detained</u>

The defendant must be detained pending his trial because there are no conditions or combination of conditions that will reasonably assure the safety of the community and/or the appearance of the defendant as required.

9

    a.  <u>The Safety Of The Community Cannot Reasonably Be Assured</u>

      i.  <u>The Nature And Circumstances Of The Offense Are Serious</u>

  The defendant is charged with the serious crime of possessing firearms after previously being convicted of a crime punishable by imprisonment for more than one year.   He possessed two rifles, two handguns, several partially constructed Molotov Cocktails, two machetes and a large knife.   He intended to use the firearms and Molotov Cocktails to commit acts of domestic terrorism.

      ii.  <u>The Weight Of The Evidence Is Overwhelming</u>

  The weight of the evidence strongly supports the likelihood of conviction.   The evidence of the defendant's crime is overwhelming, including audio and video recordings of his own statements in support of ISIL, his domestic terrorism plans, his desire to obtain firearms and his receipt of those firearms.

      iii.  <u>The Defendant's History And Personal Characteristics</u>

  The defendant's history and personal characteristics also support detention.

      (1)  <u>Criminal History</u>.

  As set forth above, the defendant has previously been convicted of operating a motor vehicle under the influence of alcohol.   The night of his arrest he stabbed an innocent nurse in the head while she was carrying out her official duties.

      (2)  <u>Character</u>.

  The defendant supports ISIL and was making plans to commit acts of domestic terrorism, including killing large numbers of innocent people.   After his arrest he stabbed the first innocent person he encountered.

        (3)      <u>History relating to drug or alcohol abuse</u>.

The defendant has previously abused alcohol.

        (4)      <u>Other factors</u>.

Because no pretrial services report has yet been issued, the government is unable to assess fully the defendant's physical and mental condition, family ties, employment, residence in the community, and financial resources.

      b.      <u>The Defendant Poses A Serious Risk Of Flight</u>

The defendant poses a serious risk of flight because as a supporter of ISIL he has planned acts of domestic terrorism and taken steps to implement those attacks. Then he attacked one of the first innocent people he met after he was arrested with the weapon most accessible to him. Given the defendant's determination to commit acts of violence in support of ISIL there are no conditions which would ensure that he would not flee to continue his attacks and to avoid being sent to federal prison.

11.    <u>Conclusion</u>

Based on the foregoing, the defendant should be detained pending trial because he poses a danger to the community and is a risk of flight.

                            Respectfully submitted,

                            CARMEN M. ORTIZ
                            UNITED STATES ATTORNEY

            By:    <u>/s/ Kevin O'Regan</u>
                    Kevin O'Regan
                    Deepika B. Shukla
                    Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

July 13, 2015

I hereby certify that the foregoing was filed by ECF and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Kevin O'Regan
Kevin O'Regan
Assistant U.S. Attorney