UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | \* |
| | \* |
| | \* |
| v. | \* |
| | \*   Criminal No. 15-30018-MGM |
| ALEXANDER CICCOLO, | \* |
| Defendant | \* |

ORDER ON DEFENDANT'S MOTION TO
COMPEL DISCOVERY PURSUANT TO L.R. 116.3

December 4, 2017

On May 22, 2017, Defendant filed a Motion to Compel Discovery seeking an order from this court compelling the government to provide Defendant with (1) the screen names or "monikers" used by the six Confidential Human Sources (CHFs) and two Under Cover Employees (UCEs) who communicated with him via various social media platforms, and (2) the true names of those CHFs or UCEs who will testify at trial. The government filed an opposition with the court, through the Classified Information Security Officer ("CISO"), and a notice of that classified filing was placed on the public docket on June 20, 2017. In its confidential filing the government provided a credible description of national security concerns justifying withholding the information sought from Defendant. While those explanations cannot be detailed in this unclassified order, the government's opposition will be available for appellate review. Through the public notice of the classified filing, the government signaled that it takes the position that the information sought by Defendant is classified and entitled to protection pursuant to Section 4 of the Classified Information Procedures Act (CIPA), 18 U.S.C. App. § 4. Following that filing, Defendant has not sought to supplement his motion to compel to address the unique issues that arise when a criminal defendant seeks classified information.

Section 4 of CIPA "creates no new rights of or limits on discovery of a specific area of classified information." *U.S. v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989). Instead, "the procedures it mandates protect a government privilege in classified information similar to the informant's privilege identified in *Roviaro* [*v. United States*, 353 U.S. 53 (1957)]." *Id.* In *Roviaro*, the Supreme Court established that disclosure of identifying information for an informant is proper only where the defendant demonstrates the information "is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause." *Roviaro*, 353 U.S. at 60-61.

The First Circuit has recognized that when a defendant seeks information protected by the informant's privilege, "the law places the burden squarely on the party seeking disclosure . . . to demonstrate that knowledge of the identity of a confidential informant is vital to the proper preparation and presentation of his case." *United States v. Moon*, 802 F.3d 135, 151 (1st Cir. 2015), *cert. denied*, 137 S. Ct. 830, 197 L. Ed. 2d 72 (2017). As the privilege articulated in CIPA is analogous to the informant's privilege, defendants shoulder the same burden in cases involving classified information. Defendant asserts he will be denied the rights secured to him by the Confrontation Clause of the Sixth Amendment if he is not provided with the online monikers used by all CHFs and UCEs and the true identities of those who will testify at trial, but he makes no specific argument regarding how disclosure of the monikers will be relevant and helpful to the defense. He asserts that he would use knowledge of the monikers to explore the "milieu" in which the CHSs and UCEs were known to Defendant, but the relevance, let alone the helpfulness, of such information is unclear given the specific facts of this case.

Here, the government has already provided Defendant with transcripts of all the contacts Defendant had with the CHSs and UCEs. With respect to those CHSs and UCEs who will not testify at trial, there are no issues regarding their credibility as witnesses. As to those who will testify, it is unclear how the online monikers can be used to obtain information helpful for impeachment

purposes when the monikers are essentially props used to create fictions to assist investigations, not necessarily tied to those using them in any meaningful fashion.

Additionally, while Defendant suggests that perhaps these records might not be complete or completely accurate, he has not provided any basis for this speculation, not even an assertion that the material provided by the government does not match with his own memory. Should Defendant wish to seek support for such a theory, he can, for example, start by seeking information about how the transcripts of social media exchanges between targets and CHSs and UCEs are generally produced and shared because such an inquiry does not require the disclosure of classified information. If Defendant were to discover a potential weak link in the process he could, of course, seek additional information, even classified information, based on that evidence. At this time, and in the absence of a showing that the monikers are, or may lead to, information that would be relevant and helpful to Defendant the court will deny Defendant's request for an order compelling the government to provide Defendant with the online monikers used by CHSs and UCEs involved in the investigation of Defendant.

The court turns next to Defendant's request for an order compelling the government to provide Defendant with the true identities of any CHS or UCE who will testify at trial no less than ninety days prior to trial. Defendant asserts that without this information he will be denied the opportunity to conduct his own investigation of the witnesses to test the accuracy of the information already provided by the government and, potentially, uncover other information helpful to him. In addressing this argument, the court finds instructive the opinion of the district court in *United States v. Mohamud*, 941 F. Supp. 2d 1303, 1317–18 (D. Or. 2013). The facts in *Mohamud* were similar to those here – the defendant had a number of contacts with two UCEs, all but one of which were recorded and, prior to trial, the government sought to delete their true identities from discovery pursuant to CIPA, providing in a classified filing reasons for deleting the information

3

from discovery that were related to national security. The recordings of the defendant's contacts with the UCEs came in as evidence and the UCEs gave live testimony at the trial.

Prior to trial the government had provided the defendant with background information about the UCEs, but since the court allowed the government to delete their true names from discovery pursuant to CIPA, both UCEs testified using pseudonyms. The defendant argued the UCEs should not have been permitted to testify without providing their true identities to the defendant because without their true names he was unable to investigate them and, as a result, was prevented him from conducting an effective cross-examination. Citing the Fifth Circuit's decision in *United States v. El Mezain*, 664 F.3d 467, 493 (5th Cir. 2011), the court in *Mohamud* noted there was precedent for a district court to withhold the true identity of a prosecution witness from a defendant in a case involving national security issues, provided the defendant is given sufficient information to conduct a meaningful cross-examination. *Mohamud*, 941 F. Supp. at 1317. The court in *Mohamud* concluded that withholding the UCEs true names from the defendant had not prevented him from conducting an effective cross-examination of the UCEs, explaining that the government had provided relevant information about the UCEs to the defendant, almost all of the interactions between the defendant and the UCEs had been recorded allowing defendant to draw from them in constructing his cross examination, and the UCEs had testified in person ensuring the jury had an opportunity to observe them when making credibility assessments. *Id.* 1317-18. For similar reasons, this court reaches the same conclusion here.

With the exception of one CHS, all of Defendant's interactions with CHSs and UCEs were through written, online exchanges on various social media platforms. Complete records of the exchanges have been provided to Defendant. As to that last CHS, there are recordings of all interactions the CHS had with Defendant that did not take place via social media. The government has given Defendant copies of those recordings and records of the social media exchanges. The

4

existence of these records distinguishes this case from those where a determination of guilt or innocence is likely to turn on whether a jury believes the version of events supplied by a particular witness and disputed by the defendant. *See Smith v. Illinois*, 390 U.S. 129, 130 (1968) (ruling that a defendant unable to explore a prosecution witness's true identity had been denied his Sixth Amendment right to cross-examination in a case where "[t]he only real question at the trial . . . was the relative credibility of the [defendant] and [the] prosecution witness").

"[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Even without information on the true identities of any testifying CHSs or UCEs, Defendant has adequate information from which to construct an effective cross examination, given the role actually played by the CHSs and UCEs and the documentary corroboration of those roles. However, the court cautions the government to consider carefully how they intend to use any CHSs or UCEs called to testify using pseudonyms and to be mindful that a broad direct examination of one of these witnesses could enlarge the scope of information necessary for the defense to conduct an effective cross-examination.

Accordingly, Defendant's May 22, 2017 Motion to Compel is **DENIED** in its entirety.

It Is So Ordered.

       /s/ Mark G. Mastroianni  
MARK G. MASTROIANNI  
United States District Judge