1              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
2                    WESTERN SECTION

3

4
     United States of America   )
5                                )              15cr30018-MGM
          vs                     )
6                                )         September 5, 2018
     Alexander Ciccolo           )
7    _____ )

8

9              Sentencing Hearing Held Before

10           The Honorable Mark G. Mastroianni

11             United States District Judge.

12

13

14   APPEARANCES:

15

16   On behalf of the government:  Deepika B. Shukla and Kevin
     O'Regan, Assistant United States Attorneys, 300 State
17   Street, Suite 230, Springfield, MA 01105.

18   D. Andrew Sigler, U.S. Department of Justice, 950
     Pennsylvania Avenue, NW, Washington, DC 20530.

19   On behalf of the defendant:  David P. Hoose, 100 Main
     Street, Third Floor, Northampton, MA 01060.
20
     Ramzi Kassem, Main Street Legal Services, Inc., CUNY
21   School of Law, 2 Court Square, Long Island City, NY 11101.

22                  Alice Moran, CSR, RPR, RMR
                    Official Federal Court Reporter
23                  United States Courthouse
                    300 State Street, Room 303D
24                  Springfield, MA 01105
                    (413)731-0086
25                  alice.moran@verizon.net

1    **(Hearing commenced at 12:47.)**

2    **(The defendant is present.)**

3              THE CLERK:  Your Honor, the matter before the

4    court is Criminal No. 15-30018, the United States versus

5    Alexander Ciccolo.

6        Court is now in session.  You may be seated.  Would

7    counsel please identify themselves for the Court and for

8    the record?

9              MS. BAINS SHUKLA:   Good afternoon, Your Honor.

10   Deepika Bains Shukla for the United States.

11             MR. O'REGAN:  Good afternoon, Your Honor.  Kevin

12   O'Regan for the United States.

13             MR. SIGLER:  Andrew Sigler from the Justice

14   Department for the United States.

15             MR. LAWRENCE  Jeff Lawrence from FBI,

16   Springfield.

17             THE COURT:  Thank you.

18             MR. HOOSE:  David Hoose for Mr. Ciccolo.

19             MR. KASSEM:  Ramzi Kassem for Mr. Ciccolo.

20             THE COURT:  Nice to see all of you.  Mr. Ciccolo

21   is present.

22        We are here today for sentencing, and let me ask has

23   the defense reviewed the presentence report with Mr.

24   Ciccolo?

25             MR. HOOSE:  We have, Your Honor.

```
1              THE COURT:  All right.  Mr. Ciccolo, have you
2      read the presentence report and gone over it with your
3      attorney?
4              THE DEFENDANT:  Yes, sir.
5              THE COURT:  Do you have any questions regarding
6      it?
7              THE DEFENDANT:  No, sir.
8              THE COURT:  Have you read it all?
9              THE DEFENDANT:  Yes, sir.
10             THE COURT:  And you understand it?
11             THE DEFENDANT:  Yes, I do.
12             THE COURT:  Very good.  Now, there are some
13     objections, Mr. Hoose, to the presentence report.  Do you
14     want to be heard?
15             MR. HOOSE:  Judge, there were really only two
16     and one was just the government's characterization of Mr.
17     Ciccolo as currently supporting the Islamic State.  We
18     objected to that.  We gave our reasons.  Mr. Rinaldi put a
19     footnote in which I think takes care of our objections in
20     that regard.
21         The second one --
22             THE COURT:  Your objection was for the purpose
23     of just adding information that you wanted the court to be
24     aware of?
25             MR. HOOSE:  Right.  Right.  And we related the
```

1    information as to his current feelings about the Islamic

2    State which I think were incorporated into the footnote.

3        The second objection I'm prepared to waive, Your

4    Honor.  That was a legal objection about the enhancement,

5    the terrorism enhancement, and this is not the time or the

6    place for us to be making that argument.

7            THE COURT:  All right.  The second objection is

8    waived.  The first objection is -- I note the objection.

9    To the extent to be technical it's overruled, but you've

10   accomplished what you need to accomplish by raising the

11   objection.  You've added information to the presentence

12   report and made me aware of additional information.

13       Does the government have any objections?

14           MS. BAINS SHUKLA:  No objections, Your Honor.

15           THE COURT:  All right.  In preparation for the

16   sentencing I have reviewed the presentence report.  I, of

17   course, have noted the presentence report's information

18   regarding historical information about Mr. Ciccolo, his

19   background, his upbringing, different pieces of his life

20   and how they came together.

21       I have also noted how the guidelines were calculated.

22   The guideline calculation was at a total offense level of

23   43 and a criminal history category of VI; is that correct,

24   Mr. Rinaldi?

25           PROBATION OFFICER:  Yes, Your Honor.

1          THE COURT:  All right.  Calling for -- the

2     guideline imprisonment range is life imprisonment?

3          PROBATION OFFICER:  Yes, sir.

4          THE COURT:  Does the defense agree at least that

5     in the technical sense that is a correct calculation of

6     the guidelines?

7          MR. HOOSE:  We do, Your Honor.

8          THE COURT:  All right.  Does the government want

9     to say anything about the calculation of the guidelines?

10          MS. BAINS SHUKLA:  No.  The government agrees

11     with the calculation as well.

12          THE COURT:  In a technical sense I also agree

13     that the guidelines were correctly calculated by way of

14     criminal history and total offense level and the guideline

15     imprisonment range is life.

16       Mr. Ciccolo, I want to let you know that your

17     attorneys will be making a presentation on your behalf.

18     You at the appropriate time will be given the opportunity,

19     if you want to, to address the court.  You don't have to

20     and you can discuss that opportunity and whether or not

21     you want to say anything to the court.  You can discuss it

22     with your attorneys.  All right?

23          THE DEFENDANT:  Okay.

24          THE COURT:  All right.  I have as I said

25     reviewed the presentence report, the history, the

1    background, the guidelines, and how they were calculated.

2         I have also reviewed the sentencing memorandums.   I

3    have reviewed a letter that was handed in this morning by

4    the defense by the parents of Mr. Ciccolo.

5         I have reviewed an impact letter by the nurse named

6    as a victim in this case.   I have reviewed the superseding

7    indictment.   I can tell the parties, both the government

8    and the defense, that I thought your memorandums were both

9    very well done and I appreciate the effort that was

10    obvious that you put into the sentencing memorandums.

11         So to the extent that you want to elaborate on your

12    memorandum, go right ahead, Ms. Shukla.

13              MS. BAINS SHUKLA:   Thank you, Your Honor.

14         The government is asking that the court order the

15    agreed-upon sentence of 20 years in prison followed by a

16    lifetime of supervised release along with forfeiture as

17    agreed upon in the plea agreement and a $400 special

18    assessment.

19         Now the parties came to this agreement and the

20    government specifically because, first, it reflects the

21    seriousness of the offense.   A sentence of 20 years

22    followed by a lifetime of supervised release is a very

23    serious sentence and the crime was a very serious one.

24         Mr. Ciccolo was a soldier for ISIS.   He was ready to

25    execute a plan in the name of ISIS to support his

1    extremist views.

2         Now this case speaks to the individual conduct of the

3    defendant and for that we're asking for this serious

4    sentence.  We've gone into a pretty in-depth explanation

5    about what he did in the various filings that have gone

6    before the court so I'm not going to reiterate all of

7    those facts, but I want to urge the court to look at this

8    in the context of what this country has been going through

9    in recent times.

10        The country has faced terrorism as a very significant

11   threat to our safety as a nation and this has been a major

12   challenge in the 21st Century and punctuated by very

13   significant attacks, including the Boston Marathon bombing

14   most recently.

15        The defendant himself explicitly referenced the

16   Marathon bombings in the course of his conduct that

17   resulted in this case.  He spoke of his brothers; using a

18   pressure cooker bomb at the marathon, and he in fact began

19   constructing a pressure cooker bomb.  He gathered

20   materials like nails, aerosol, a propane tank, and he said

21   that he wanted to use those for maximum explosive power.

22   He also bought a presser cooker from Walmart the day

23   before he was arrested on July 3, 2015.

24        He also spoke of wanting to prolong the suffering of

25   people and to instill fear and pain during his attack.

1    Specifically he talked about putting Styrofoam in his

2    improvised incendiary devices.  He create Molotov

3    cocktails and he had put Styrofoam in those Molotov

4    cocktails, and the purpose of that Styrofoam was to

5    thicken the mixture so that it would stick to people's

6    skin so that the fire would be harder to put out and

7    harder to remove from people.

8        With terrorism being such a threat in the United

9    States today, it is so necessary to be vigilant and to

10   address issues and threats before they materialize into

11   actual domestic terrorism attacks that result in mass

12   causalities.

13       I want to highlight the work here of the FBI's Joint

14   Terrorism Task Force in addressing this before it became

15   an actual attack and before many innocent lives were lost.

16   They received a lead and they followed up on that lead and

17   because of them, a domestic terrorism attack was avoided

18   and we're thankful for that.

19       Especially today where young people are becoming so

20   easily radicalized through the internet, it is very

21   important that the FBI's JTTT continue what they're doing,

22   continuing to address issues before they arise into mass

23   casualties and so I wanted to recognize that.

24       I also wanted to make clear that the defendant is

25   being prosecuted here because he took action on his

1   extremist views and support of ISIS.  His views do not

2   reflect the beliefs of the overwhelming majority of people

3   peaceful and law-abiding Muslims in this country and

4   across the world.

5       Now the defendant has argued and probably will argue

6   today that he wasn't going to be able to pull off his

7   plan; that he didn't have the ability to do it.  Now

8   whatever limitations to his organizational ability, the

9   fact is that he was on the internet soliciting people to

10  help him in his plan and luckily he didn't find someone to

11  take him up on his offer but he could have.  We could

12  definitely envision the situation where he did go into a

13  school cafeteria and shoot it up and detonate presser

14  cooker bombs and his Molotov cocktails.

15      The fact remains that he did hurt someone in the

16  process here.  He attacked an innocent nurse who simply

17  was trying to provide him medical care.  This was after

18  his arrest.  He stabbed her over and over and over again

19  in her head with a pen until it broke.  That's the only

20  reason he stopped and she ran screaming from the room

21  crying.

22      With that pen he left an indelible mark on her life.

23  He did irreparable damage to her life.  He damaged her

24  sense of self, her sense of security, and even her sense

25  of joy in the world, and she submitted that letter to you

1    to reflect the pain that she endures.  Even though she may

2    be healed physically, this is an emotional scar that will

3    last for the rest of her life.

4        I wanted to make it clear to the court that the nurse

5    is on board with the parties' agreement, and she finds

6    some comfort in the fact that she will not have to take

7    the stand and she will not have to relive this trauma

8    frame by frame.

9        I've gone through this in detail in the sentencing

10   memo that the sentence here is fair and appropriate given

11   other sentences around the country and especially in this

12   district and the defendant has done this as well.  So I

13   won't go into more detail unless the court has questions

14   about that.

15            THE COURT:  No.  The court actually found it

16   very useful your comparison to other similar cases both

17   the ones you cited and the defense cited for the court's

18   guidance and to avoid any disparity in sentencing.  That

19   was very useful.

20            MS. BAINS SHUKLA:  Thank you.

21            THE COURT:  Ms. Shukla, is there anything

22   further that the named victim, the nurse in this case,

23   would like to say or add beside the letter that was

24   submitted?

25            MS. BAINS SHUKLA:  She has elected not to speak

1    today, but she wishes for her statement to be considered

2    and she feels that that expresses what she needs to say to

3    the court.

4              THE COURT:  All right.  Thank you.

5              MS. BAINS SHUKLA:  I want to end just by saying

6    that this case is a unique one.  I said before that the

7    FBI's JTTT responded to a lead and that lead came from the

8    defendant's father.  He reported the defendant.  He was

9    afraid that he wanted to go and fight for ISIS.

10        The defendant's father is a captain in the Boston

11   Police Department so he surely recognized what the

12   consequences would be for reporting his son.  He had to

13   balance these dual roles of being a father and also a law

14   enforcement officer.

15        The government wishes to recognize what an agonizing

16   and heart breaking, gut-wrenching decision that must have

17   been for him so we want to publicly state that and

18   acknowledge that.  That also went into our decision to

19   agree to the agreed-upon sentence.

20        We also want to encourage other people in the future

21   to come forward if they see their loved ones going down

22   the wrong path because the government strongly believes

23   that in this case it saved the lives of numerous people.

24        I'll leave the argument there and I'm happy to answer

25   any questions if the court has any.

1          THE COURT:  All right.  Ms. Shukla, I just

2     wanted to ask you this agreement has been approved, has it

3     not, at multiple levels of government oversight?

4          MS. BAINS SHUKLA:  It has, both in our front

5     office in Boston and also by Washington.

6          THE COURT:  All right.  Thank you.

7          MS. BAINS SHUKLA:  Thank you.

8          MR. HOOSE:  Good morning, Your Honor.  Thank you

9     for the opportunity to address the court before imposing

10     sentence.

11          I'm going to keep my comments pretty brief as well.

12     I think it's a fair statement to say that for the past

13     three plus years I have tried my best to get my colleagues

14     on the other side of the room to look at what Mr. Ciccolo

15     actually did, what he was capable of doing as opposed to

16     some of the vial rhetoric that he put out over the

17     internet.

18          I guess I would sum up my efforts as saying that I

19     was partially but certainly not fully successful.  If you

20     read the government's memorandum and consider the

21     government's comments and read our memorandum and consider

22     my comments, you will see that there is a lot that we

23     don't agree on but there is one thing we do agree on and

24     that's the most important thing and that is that the

25     appropriate sentence for this conduct is the one that is

1    before you for imposition today.

2              THE COURT:  And you agree -- and clearly you do

3    and you've educated the court regarding similar cases.  I

4    understand that you do after surveying similar cases with

5    generally similar facts that this is within the range of

6    sentences that have been imposed on other individuals?

7              MR. HOOSE:  Yes, Your Honor.  The excerpt that

8    we put into the sentencing memorandum is actually a very

9    small slice of the data that we looked at.  Both Mr.

10   Kassem and I have been keeping track of virtually all

11   these cases around the country as the government has as

12   well, and the ones that we put in were the ones that we

13   thought were the most similar.

14       The numbers actually for all ISIS defendants, for

15   lack of a better term, as we indicated actually the

16   sentence imposed is actually something less than what we

17   are agreeing to.  On the other hand, the government would

18   point out that most of those cases do not contain a weapon

19   of mass destruction charge.

20       So, yes, we have gone out of our way to keep up on

21   these things and there are organizations, people at

22   Fordham Law School to be particular, that do a great job

23   of tracking these things so that certainly was a big part

24   of this.

25       I want to say what you as a judge and former

1    prosecutor and defense lawyer know to be true, this

2    decision was Mr. Ciccolo's decision.  He made it very

3    clear early on that if possible he wanted to reach

4    agreement with the government.

5        He did not want the drama, the contested sentencing

6    hearing.  He did not want a trial that was going to drag

7    out all of the details of this for public scrutiny, and

8    we're grateful that we're able after considerable effort

9    to reach an agreement that both Mr. Ciccolo could live

10   with and the government could live with.

11       I think it is very clear to me that Mr. Ciccolo is

12   ready to move on to the next phase of his life.  He is

13   hopefully looking forward to having time and circumstances

14   in which he can further his education.  He's always been

15   an inquisitive young man, and he looks to spend a lot of

16   the next period of time that he will spend incarcerated

17   bettering himself educationally.

18       There are some things that I would ask you to

19   recommend, Your Honor, in the JNC that will ultimately be

20   submitted.  The first is that you recommend him for

21   inclusion in the RDAPT program, the residential drug and

22   alcohol program.  It is, as you know, a very good program.

23       Mr. Ciccolo has now been sober obviously for the time

24   that he has been incarcerated.  He had been mostly sober

25   for about two years prior to that, but he has an extensive

1    history of substance abuse and was struggling with it and

2    largely due to his religious beliefs was able to give it

3    up mostly, if not completely, prior to the time of his

4    arrest.

5        The next thing I'm going to ask the court to

6    recommend to the Bureau of Prisons in his judgment and

7    commitment order is that he not be sent to a CMU.  A CMU

8    is a Communications Management Unit that is operated by

9    the Bureau of Prisons, and we are asking the court to

10   explicitly not recommend him for that for the following

11   reasons:  Communications Management Units -- first of all,

12   there are only two of them and they are at U.S.P. Marion

13   and Terre Haute, Indiana.  Obviously a long way away from

14   Mr. Ciccolo's family.

15       Communications Management Units have restricted

16   ability to write and visit and things like that that we

17   think are completely unnecessary in this case.  Mr. Kassem

18   pointed out to me as we were coming in here that many of

19   the people who are put in Communication Management Units

20   speak another language other than English and therefore it

21   is more difficult to monitor their communications with the

22   outside world.

23       He has been -- Mr. Ciccolo has been at Wyatt for over

24   three years.  His letters, his phone calls all have been

25   monitored.  I think it is safe to say that 95 percent or

1    more of his communications, both telephone and mail, are

2    within his parents and they are in English and so there is

3    really nothing to monitor.

4         Furthermore, as the court is aware from reading the

5    sentencing memorandums he did not have a co-defendant.  He

6    did not have any co-conspirators.  There were no

7    unindicted co-conspirators.  There is no one for him to

8    communicate with for whom his communication needs to be

9    managed.

10        So for those reasons, and particularly for the

11   overriding reason that it would put him so far, halfway

12   across the country from his family, we would ask that the

13   court recommend to the Bureau of Prisons that he not be

14   placed in a Communications Management Unit.

15        We would ask that he be placed in a medium security

16   facility.  Now obviously the Bureau of Prisons is going to

17   calculate his security level.  I have done it.  I won't

18   pretend to be an expert but I believe he will come out at

19   a medium security level.

20        There are three medium security facilities in the

21   Northeast that we think would be appropriate for him.

22   Those are FCI Fairton, F-a-i-r-t-o-n, FCI Allenwood,

23   A-l-l-e-n-w-o-o-d, and FCI Schuylkill,

24   S-c-h-u-y-l-k-i-l-l.  The latter two are in Northeast

25   Pennsylvania and Fairton is in New Jersey.  Still, about a

1   four- or five-hour drive for his folks who have visited

2   him regularly and been a strong part of his support

3   system.   I guess I could say really the only support

4   system he has had so we are very much hoping that the

5   Bureau of Prisons with your recommendation will place him

6   at a facility which they can get to see him on a regular

7   basis.

8         THE COURT:  Mr. Hoose, what's the court's

9   authority to recommend or to try to give any guidance to

10  BOP regarding the Communications Management Unit

11  appropriateness?

12        MR. HOOSE:  You know, I don't know the answer to

13  that, Your Honor, but I think that the Bureau of Prisons

14  -- my belief is that the Bureau of Prisons is always happy

15  to accept recommendations.  They obviously don't have to

16  follow them, but I don't think it's any different than

17  recommending a facility.  As you know, we oftentimes

18  recommend facilities.  I have done it; judges have agreed

19  with me; sometimes my client goes there; sometimes he

20  doesn't.

21        THE COURT:  But oftentimes there are facilities

22  -- I'm very familiar with Mr. Ciccolo's history of drug

23  use for example.  Therefore, I am informed and able to

24  make a decision, an informed decision regarding

25  recommendation to a drug program for example.

1          I am not so -- I am not educated or informed on how

2    one is evaluated for the necessity of this Communications

3    Management Unit so I don't know that I'm equipped to make

4    that decision nor do I know that I have the authority to

5    do that.

6               MR. HOOSE:  Well, again, I don't think you need

7    authority to just make a recommendation.  You can -- I

8    don't think I put the actual policy statement in the

9    sentencing memorandum.  I have the CFR provisions that

10   govern Communications Management Units, and really they

11   don't enlighten you a heck of a lot.  They just say that

12   the goal is to make it as much like any other prison.

13   It's just that your communications are restricted, which

14   of course begs the question why do we need to restrict

15   this person's communication?

16        If this were someone, not a U.S. national, who had

17   connections around the world, people he might be trying to

18   connect with, people who had been co-conspirators,

19   unindicted co-conspirators, well, then maybe that would be

20   appropriate.

21        Mr. Kassem told me that it's his understanding that

22   many of the people there are there because they

23   communicate in a language other than English and it's

24   appropriate for the volume of their communications to be

25   limited so that it could be more effectively monitored.

1    I'm just pointing out that I think -- and I think one

2    of the things they do consider is what's in the

3    presentence report, what's in the judgment and commitment

4    in terms of making a decision as to that designation, and

5    I think that it is within -- I don't think I'm asking you

6    to do anything that you should be uncomfortable with.

7        I think it is really not disputed that almost all of

8    his communications are with his mother and stepfather.

9    It's also not disputed that he had no co-defendants, nor

10   did he have any unindicted co-conspirators so what would

11   the point of that be?

12       I do have one other request along that line that I

13   would ask to make at the sidebar if you would be willing

14   to hear us.

15              THE COURT:   Sure.

16   (Sidebar conference filed under separate cover.)

17              THE COURT:   Anything else?

18              MR. HOOSE:   I don't think I have anything else

19   to add, Your Honor.

20       Mr. Kassem, is there anything you want to add?

21              MR. KASSEM:   No.   Thank you, Your Honor.

22              THE COURT:   Thank you.

23       Either Mr. Kassem or Mr. Hoose, have you discussed

24   with Mr. Ciccolo the opportunity that I told him about?

25   That is, addressing the court if he would like to?

1           MR. KASSEM:  Yes, Your Honor.

2           THE COURT:  All right.  Mr. Ciccolo, do you want

3    to address the court?

4           THE DEFENDANT:  No, sir.

5           THE COURT:  All right.  After hearing the

6    arguments of the parties and reviewing the written

7    materials submitted by the parties, considering the

8    sentencing factors, 3553(a) factors to impose a sentence

9    sufficient but not greater than necessary; that includes

10   the need to reflect the seriousness of the crime, which

11   this particular case raises crimes of extraordinary

12   seriousness; to promote respect for the law and to provide

13   just punishment for the offense; in addition, a sentence

14   to deter criminal conduct in the future and protect the

15   public.  Those are paramount concerns in this case.

16       Also, one of the goals of sentencing is to promote

17   rehabilitation and certainly it is the hope of the court

18   in imposing any sentence, including this one, that a

19   rehabilitative effect of incarceration will occur.

20       There will be opportunities to be involved in

21   programming and education at the institution or

22   institutions where Mr. Ciccolo will be held and it will be

23   his decision to make as to his level of involvement in

24   that but to achieve rehabilitation certainly remains a

25   high goal of any sentencing.

1          The nature and circumstances of this offense are

2     extreme.  Again as I've noted, I found it very useful to

3     look at cases where circumstances are similar and review

4     the sentences that were imposed in those similar cases for

5     the obvious reason that both parties pointed out to me in

6     their written materials certainly to be fair but to avoid

7     any disparity in sentencing.

8          I find that this case was dealt with and negotiated

9     by very competent counsel.  The government's team is a

10    group of very competent attorneys and, as noted by Ms.

11    Shukla, this plea agreement was reviewed at multiple

12    levels of oversight in the U.S. attorney's office both

13    locally and at the Washington level and the court gives

14    that quite a bit of consideration.

15         Also, for the defense, the defense team was selected

16    for Mr. Ciccolo based upon their skill and accomplishment

17    in handling criminal defense matters and also for their

18    ability in this specialized type of case.  Clearly Mr.

19    Ciccolo has received a very high level of representation,

20    and I do give a significant amount of weight towards

21    respecting the agreement made between the parties under

22    these circumstances.

23         Having considered those factors I see no reason not

24    to adopt the agreement reached between the parties.

25    Accordingly, under the binding plea agreement reached

1    between the government and the defense, the court will

2    impose a sentence of 20 years' incarceration followed by a

3    lifetime of supervised release.

4        There is also -- there is no restitution and there is

5    a $400 special assessment.

6        Mr. Rinaldi, were there conditions?

7            PROBATION OFFICER:  Yes, sir.  There were

8    proposed special conditions at page 39 and the top of page

9    40.

10           THE COURT:  Have you reviewed those conditions

11   with Mr. Ciccolo?

12           MR. HOOSE:  I can't remember if I did or not,

13   Your Honor, to be honest with you.

14           THE COURT:  Mr. Ciccolo, I want to -- and I can

15   hand this down so you can show Mr. Ciccolo.  There are

16   conditions of supervised release, both mandatory and

17   special, that will become conditions that are applicable

18   to you.

19       Now, certainly at the point that Mr. Ciccolo is

20   released the defense may or Mr. Ciccolo may at that point

21   take issue or want to challenge certain conditions that at

22   this point may not appear objectionable to him in any way

23   but down the road may.

24       Mr. Ciccolo, your mandatory conditions of supervision

25   include not committing any other federal, state, or local

1    crime; no possession of an unlawful substance; refrain

2    from the unlawful use of a controlled substance, and

3    submit to drug testing in the number prescribed in the

4    mandatory term of supervision.

5         You must cooperate in the collection of a DNA sample.

6         You shall comply with all standard conditions that

7    have been adopted by the court.

8         Under the special conditions recommended by probation

9    you must not knowingly communicate or otherwise interact

10   with members, associates, and/or affiliates of any

11   terrorist organization.

12        Number two, you are prohibited from consuming any

13   alcoholic beverages.

14        Number three, you must participate in a program for

15   substance abuse counseling as directed by probation.

16        Number four, you must participate in any mental

17   health program as directed by probation.

18        Number five, you must not possess or use any computer

19   or internet comprable device without prior approval of the

20   probation department.

21        Number six, you must allow the installation of a

22   computer internet monitoring software on approved internet

23   capable devices that you have.

24        Now the probation will monitor any downloading,

25   uploading, transmitting, or otherwise using images

1   regarding any terrorist or radical-type behavior.

2       Number seven, you must advise anyone using the

3   monitor internet capable devices that those devices are in

4   fact being monitored by probation.

5       Number eight, you must disclose all account

6   information relative to internet access, social networking

7   and email including your user names and passwords to the

8   probation department, as well as your telephone cable or

9   internet services.

10      Number nine, you must provide the probation officer

11  with access to any requested financial information for

12  purposes of monitoring your compliance with the imposed

13  computer access monitoring conditions.

14      Number ten, you shall be required to contribute to

15  the cost of evaluation and treatment based upon your

16  ability to pay.

17      Now many of those conditions may be affected by the

18  development of technology over the period that Mr. Ciccolo

19  is incarcerated so they can be reviewed at a point where

20  he is closer to release.

21      Mr. Ciccolo, I can tell you that you have in your

22  plea agreement entered into a plea agreement that waives

23  many, if not most, of your appellate rights.  These

24  waivers are generally enforceable, but if you believe that

25  any waiver of your appellate rights are not valid, you can

1    present that theory to an appellate court for review.

2         So if you have any questions regarding appeal of this

3    agreed-upon sentence, you should discuss those options

4    with your attorney.  There is generally a time limit for

5    filing those types of things with the appellate court so

6    you should discuss them with your attorneys soon if you

7    want to review those matters.

8         All right.  As to the recommendations, the court will

9    make a recommendation that Mr. Ciccolo be allowed into the

10   residential drug treatment program.  I think based upon

11   what I know of him that that program is appropriate.

12        I will also make a recommendation to the Bureau of

13   Prisons that he be placed in the northeast; that is, at

14   Fairton, Allenwood, or Schuylkill -- I think I might have

15   mispronounced that -- but a northeast facility to allow

16   for his family to visit him.  Now, of course, that is

17   based upon where the BOP believes that he can be

18   appropriately and safely housed.

19        I'm not going to make a decision regarding what his

20   security level will be.  I am going to leave that for the

21   Bureau of Prisons.

22        I am not going to make a decision as to whether or

23   not he should be considered for screened in or screened

24   out of a Communications Management Unit, or if he should

25   be given any accommodation regarding housing that was

1    raised at the sidebar because I simply do not have enough

2    information to make either of those recommendations.

3        I will make a recommendation that urges the Bureau of

4    Prisons to conduct an analysis and evaluation of Mr.

5    Ciccolo to determine appropriate housing and appropriate

6    conditions of housing, including based upon what I know a

7    psychological evaluation to determine the most

8    appropriate, effective, and humane way to house Mr.

9    Ciccolo under the circumstances as they are presented to

10   this court as a whole.

11       Anything else from the defense?

12           MR. HOOSE:  No, sir.

13           MS. BAINS SHUKLA:  Your Honor, the parties have

14   also agreed on forfeiture so we ask that that be part of

15   the order as well.

16           THE COURT:  All right.  The forfeitures are --

17   and they were part of the plea agreement?

18           MS. BAINS SHUKLA:  They're part of the plea

19   agreement at paragraph 8.  There's two forfeiture

20   allegations in the superseding indictment, a terrorism

21   forfeiture allegations where we're asking to forfeit

22   certain electronic devices as listed in the plea agreement

23   and a firearm forfeiture allegation where we're asking to

24   forfeit the four firearms that are also listed in the

25   agreement.

1            THE COURT:  Those forfeitures will be allowed.

2    I will have them endorsed.

3            MS. BAINS SHUKLA:  Thank you, Your Honor.

4            THE COURT:  Anything else?

5            MS. BAINS SHUKLA:  No, Your Honor.  Thank you.

6            THE COURT:  The clerk has brought to my

7    attention, Ms. Shukla, relative to counts 1 and 2 of the

8    original indictment, is there a motion to dismiss those?

9            MS. BAINS SHUKLA:  Yes.  We move to dismiss the

10   original counts.

11           THE COURT:  All right.  So the original counts,

12   Counts 1 and 2 of the original indictment, are dismissed

13   on motion of the government, and the plea agreement has

14   been under seal.  Has there been discussion amongst the

15   parties about any need for the plea agreement to remain

16   under -- it was under seal pending sentencing.

17           MS. BAINS SHUKLA:  I didn't realize that.  I

18   don't see any need to keep it under seal.

19           MR. HOOSE:  Nor do I, Your Honor.

20           THE COURT:  The seal will be lifted on the plea

21   agreement.  Okay.

22       Anything else?

23           THE CLERK:  No.

24           THE COURT:  Very good.  Thank you.

25   **(Hearing concluded at 1:35.)**

```
 1    (The certification of this transcript does not apply to

 2    any reproduction of the same by any means, unless under

 3    the direct control and/or supervision of the certifying

 4    reporter.)

 5

 6                          CERTIFICATION

 7

 8            I certify that the foregoing is a correct

 9    transcript of the record of proceedings in the

10    above-entitled matter to the best of my skill and ability.

11

12

13

14    /s/ Alice Moran                    December 17, 2018

15    Alice Moran, RMR, RPR

16    Federal Official Court Reporter

17

18

19

20

21

22

23

24

25
```